UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

In re: ) Case No. 13-12135
)
DAVID B. SCOTT and ) Chapter 13
RENEE L. SCOTT, )
) Chief Judge Pat E. Morgenstern-Clarren
Debtors. )
) **MEMORANDUM OF OPINION**
) **AND ORDER**[1]

The chapter 13 trustee objects to the debtors' proposed plan on the ground that it does not commit their projected disposable income to pay their unsecured creditors, as required by 11 U.S.C. § 1325(b)(1)(B). For the reasons stated here, the trustee's objection is sustained and confirmation of the plan is denied.[2]

## I. JURISDICTION

This court has jurisdiction under 28 U.S.C. § 1334 and General Order No. 2012-7 entered by the United States District Court for the Northern District of Ohio on April 4, 2012. This is a core proceeding under 28 U.S.C. § 157(b)(2)(L), and it is within the court's constitutional authority as analyzed by the United States Supreme Court in *Stern v. Marshall*, 131 S.Ct. 2594 (2011).

---

[1] This opinion is not intended for publication, either electronically or in print.

[2] Docket 2, 22, 36, 37, 38.

## II. FACTS

The parties stipulate that:[3]

The debtors filed their chapter 13 case on March 28, 2013. Their Schedule I states that they have combined gross monthly income of $7,367.32, combined average monthly income of $4,754.68, and do not anticipate any changes in income in the upcoming year. Their Schedule J shows average monthly expenses of $2,881.50 and net monthly income of $1,873.18. The court notes that Schedule J does not include the debtors' monthly mortgage payment of $1,545.68, which means that the debtors have monthly net income of $327.50 according to their schedules.

The debtors filed a second amended Form 22C (means test) on May 29, 2013. They list current monthly income of $6,893.44 on Line 20 and they list monthly disposable income under 11 U.S.C. § 1325(b)(2) of $575.45 on Line 59.

Debtor David Scott's 401(k) loans will be paid in full by May 31, 2014 at a monthly rate of $81.85 and by February 28, 2015 at a monthly rate of $177.82.

The debtors' plan offers their unsecured creditors a pro rata share of $1,465.00.

## III. DISCUSSION

### A. 11 U.S.C. § 1325(b)(1)(B)

When a plan does not provide for full payment to unsecured creditors, and the trustee objects, the plan cannot be approved unless–

\* \* \*

---

[3] The parties submitted this dispute for decision on the stipulated facts. *See* docket 23, 33.

> the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. § 1325(b)(1)(B). The parties agree that the debtors are above-median income debtors with a 60 month commitment period. *See* 11 U.S.C. § 1325(b)(4). Their dispute focuses on the differences between the income and expense amounts stated on the debtors' schedules versus the amounts stated on their means test, and which numbers should be used to calculate "projected disposable income." The debtors have the burden of proving that their plan meets the requirements of § 1325. *See Shaw v. Aurgroup Fin. Credit Union*, 552 F.3d 447, 458 (6th Cir. 2009).

The Bankruptcy Code defines "disposable income" as "current monthly income" less "amounts reasonably necessary to be expended" for "maintenance or support," business expenditures, and certain charitable contributions. 11 U.S.C. § 1325(b)(2). A debtor's "current monthly income" is generally defined as the average income a debtor receives from all sources during the six-month period prior to filing. *See* 11 U.S.C. § 101(10A). For above-median income debtors, the amounts reasonably necessary to be expended for support or maintenance are "determined in accordance with subparagraphs (A) and (B) of section 707(b)(2)" of the bankruptcy code." 11 U.S.C. § 1325(b)(3). In other words, the formula for determining an above-median income debtor's current monthly income and reasonably necessary expenses for purposes of determining disposable income is reflected on Form 22C (the means test), which debtors are required to file. *Hamilton v. Lanning*, 130 S. Ct. 2464, 2470 n. 2 (2010). This is in contrast to below-median income debtors where Schedule J is the starting point to determine the

3

amounts reasonably necessary for the debtor's maintenance and support under § 1325(b)(2). *In re Short*, No. 08-11224, 2008 WL5751873 at *4 (Bankr. N.D. Ohio Sept. 11, 2008).

The term "projected disposable income" is not defined in the Bankruptcy Code. In most above-median income cases, the calculation simply requires *projecting* the disposable income figure from the means test over the term of the plan. *Lanning*, 130 S.Ct. at 2475; *see also Baud v. Carroll*, 634 F.3d 327, 345 (6th Cir. 2011). However, because the calculation of projected disposable income is forward-looking rather than mechanical, in unusual cases "the court may account for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation." *Lanning*, 130 S.Ct. at 2478; *see also Darrohn v. Hildebrand (In re Darrohn)*, 615 F.3d 470, 477 (6th Cir. 2010) (applying *Lanning* and holding that the determination of a debtor's projected disposable income may account for changes in both income and expenses).

The court's discretion to take such changes into account does not, however, allow it to alter the Bankruptcy Code's formula for calculating an above-median income debtor's disposable income. *See Baud*, 634 F.3d at 345 (holding that *Lanning* permits a bankruptcy court to take into account known changes in a debtor's income, but does not permit it to disregard the definition of disposable income in favor of the debtor's actual available income as set forth on Schedule I) (citing, *inter alia*, *Darrohn*, 615 F.3d at 476 and stating that "In *Darrohn*, we considered *Lanning's* application to a situation in which changes in the debtors' financial circumstances led to Form 22C's understating their income and overstating their expenditures . . . [and] held that these changes fell squarely within *Lanning's* holding.").

4

## B. The Debtors' Income

The debtors' means test shows that they have $6,893.44 in current monthly income, while their Schedule I shows monthly income of $7,367.42. The trustee argues that the additional $473.98 in monthly income on Schedule I is an appropriate upward adjustment in determining the debtors' projected disposable income under the *Lanning* decision. As the higher income is known, the trustee's position is persuasive. The debtors do not state any valid opposition to this income adjustment. Their initial brief asserts that debtor David Scott has experienced a decrease in income because he is no longer accumulating overtime. They did not, however, provide any new income figures or an amended Schedule I to substantiate or quantify such a change. Moreover, their reply brief argues for the use of Schedule I in calculating their projected disposable income, which mirrors the trustee's position. Consequently, the trustee's objection on this point is sustained with the debtors' projected disposable income being calculated using the higher income figure stated on Schedule I.[4]

The trustee argues further that the calculation of the debtors' projected disposable income should also include the extra income that will be available once the debtor David Scott's 401(k) loans are repaid, which result is fully-supported by the Sixth Circuit decision *Seafort v. Burden (In re Seafort)*, 669 F.3d 662 (6th Cir. 2012).[5] As the Circuit stated in that opinion, "the income made available once Debtors' 401(k) loan repayments are fully repaid is properly committed to

---

[4] As the trustee notes, this income amount must be adjusted for any additional tax.

[5] The trustee's brief suggests facts regarding the loan balances and payment amounts which are not in evidence and cannot be resolved here.

the debtors'. . . Chapter 13 plan[] for distribution to the unsecured creditors[.]" *Id.* at 674. The trustee's objection on this point is also sustained.[6]

### C. The Debtors' Expenses

The debtors argue that their Schedules I and J show that they only have excess monthly income of $327.50 to fund plan payments for unsecured creditors–an amount which is significantly less that the $575.45 in monthly disposable income shown on their means test. They contend that expenses included on Schedule J, such as $301.00 for cigarettes, $230.00 for pet food, grooming and supplies, and $322.50 for recreation are reasonable and that an adjustment to disposable income to account for them is appropriate under *Lanning*. The trustee objects to using Schedule J rather than the means test to determine the expense deductions and argues that even if it was appropriate to do so the debtors have not offered to pay the net income on their schedules to unsecured creditors.

The trustee's objection on this point is also well taken. The debtors argue that their schedules should control the determination of their projected disposable income. However, as the trustee notes, even accepting that argument, their plan only offers unsecured creditors a pro rata share of $1,465.00 while their schedules show that they can afford to pay these creditors substantially more.

---

[6] The debtors initially argued that the means test does not allow them to account for the 401(k) loan repayments. This argument is faulty because the form includes a deduction for required repayments of loans from retirement plans (Line 55) and the debtors' means test lists a deduction of $281.32. The reasoning behind the argument is unclear because the deduction which the debtors took on the means test is the same as the payroll deduction which they took on Schedule I for repayment of the 401(k) loans.

6

More to the point, however, is the lack of merit to the debtors' argument that their schedules should control the determination of projected disposable income. For above-median income debtors, the formula set out in the means test supplants the previous practice of calculating reasonable expenses for purposes of determining "projected disposable income" on a case-by-case basis by reference to a debtor's actual expenses. While *Lanning* permits consideration of known changes in the income and expense components of a debtor's means test, it does not permit the court to abandon the means test analysis entirely in favor of the debtors' actual expenses and income as shown on their schedules. The means test provides specific categories of deductions from income. The debtors took the allowed deductions on their means test and were left with monthly disposable income of $575.45. What they have shown here is not changes to their expenses within the meaning of *Lannning*, but rather their inclination to spend over and above the allowed deductions.

### IV. CONCLUSION

For the reasons stated, the trustee's objection to confirmation is sustained and confirmation of the debtors' plan is denied.

IT IS SO ORDERED.

*[signature]*
Pat E. Morgenstern-Clarren
Chief Bankruptcy Judge